IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:17-CV-538-GCM-DCK

| | |
|---|---|
| JOHNNIE A. WALTERS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 11) and the "Commissioner's Motion For Summary Judgment" (Document No. 13). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" (Document No. 11) be <u>denied</u>; that the "Commissioner's Motion For Summary Judgment" (Document No. 13) be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I.  BACKGROUND

Plaintiff Johnnie A. Walters, Jr., ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). On or about March 13, 2012, Plaintiff filed application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, alleging an inability to work due to a disabling condition beginning June 14, 2006. (Transcript of the Record of Proceedings ("Tr.") 193, 644). The Commissioner of Social Security (the "Commissioner" or

"Defendant") denied Plaintiff's application initially on June 15, 2012, and again after reconsideration on October 23, 2012. (Tr. 23, 120, 124). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> On your application you stated that you were disabled because of damaged lumbar discs, nerve damage, depression and anxiety. In order to get benefits, disability had to be established on or before 12/31/2011 because insurance coverage ended on that date. The medical evidence shows that your condition was not severe enough prior to the end of your insured period to be considered disabling. More evidence was needed to fully evaluate the claim. Because we could not get this evidence, a disabling condition cannot be established. Therefore, based on all the medical and non-medical evidence, we have decided that you were not disabled on or before coverage ended according to the Social Security Act.

(Tr. 124).

Plaintiff filed a timely written request for a hearing on November 15, 2012. (Tr. 23, 128). On July 10, 2013, Plaintiff appeared and testified at a hearing before Administrative Law Judge Jane A. Crawford ("ALJ Crawford"). (Tr. 23, 42-100). In addition, Selena Earl, a vocational expert, Michelle Walters, Plaintiff's wife, and J. Boyce Garland, Plaintiff's attorney, appeared at the hearing. Id.

ALJ Crawford issued an unfavorable decision on October 11, 2013, denying Plaintiff's claim. (Tr. 23-34, 644). On November 18, 2013, Plaintiff filed a request for review of ALJ Crawford's decision, which was denied by the Appeals Council on May 20, 2014, and again on September 9, 2014. (Tr. 1, 5, 12-14, 17, 644).

Plaintiff, through his counsel, George C. Piemonte, then filed a "Complaint" seeking a reversal of ALJ Crawford's determination with this Court on November 7, 2014. Walters v. Colvin, 3:14-CV-624-FDW, (Document No. 1). Ultimately, Defendant Colvin filed a "Consent

2

Case 3:17-cv-00538-GCM-DCK   Document 16   Filed 11/05/18   Page 2 of 18

Motion For Remand" (Document No. 15) that was granted by the Court on November 6, 2015. (Tr. 644); see also (Tr. 744-748, 779, 781).

On February 2, 2016, the Appeals Council vacated ALJ Crawford's decision and issued an "Order Of Appeals Council Remanding Case To Administrative Law Judge" with instructions to: (1) further consider the opinion evidence from Kirsten D'Amore, M.D. and explain the weight given such evidence; (2) further consider claimant's maximum residual functional capacity and provide an appropriate rationale with specific references to evidence of record; and (3) if warranted, obtain evidence from a vocational expert ("VE") and resolve any conflicts between the VE's evidence and the Dictionary of Occupational Titles ("DOT"). (Tr. 739-742); see also (Tr. 644).

Plaintiff appeared and testified at a second hearing on July 19, 2016, before ALJ Clinton C. Hicks (the "ALJ" or "ALJ Hicks"). (Tr. 644, 662-738). In addition, Lavonne Brent, a vocational expert ("VE"), Plaintiff's wife, Michelle Walters, and J. Boyce Garland, Jr., Plaintiff's attorney, appeared at the hearing. Id.

ALJ Hicks issued an unfavorable decision on November 3, 2016, *again* denying Plaintiff's claim. (Tr. 641-656). Plaintiff requested review of ALJ Hicks' decision and submitted written exceptions dated November 9, 2016. (Tr. 634). The Appeals Council declined to assume further jurisdiction in this case on July 10, 2017. (Tr. 635). ALJ Hicks' decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. Id. The Appeals Council opined that "[a]fter reviewing the entire record, we determined that the ALJ did not abuse his or her discretion, and there are no other reasons under our rules to assume jurisdiction in your case." (Tr. 634).

3

Plaintiff filed a new "Complaint" with this Court on September 8, 2017, again with Mr. Piemonte as counsel, thus initiating the current action and seeking a reversal of ALJ Hicks' determination. (Document No. 1). On October 2, 2017, the undersigned was assigned to this case as the referral Magistrate Judge.

Plaintiff's "Motion For Summary Judgment" (Document No. 11) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No. 12) were filed March 12, 2018; and the "Commissioner's Motion For Summary Judgment" (Document No. 13) and "Memorandum Of Law In Support Of The Commissioner's Motion For Summary Judgment" (Document No. 14) were filed May 9, 2018. "Plaintiff's Reply In Support Of Motion For Summary Judgment" (Document No. 15) was filed on May 22, 2018.

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is now appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than

create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between June 14, 2006, and his date last insured.[1] (Tr. 644, 656). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

5

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 654-655).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since June 14, 2006, his alleged disability onset date. (Tr. 646). At the second step, the ALJ found that "lumbar disc herniation with degenerative disc disease and radiculopathy, obesity, depression and anxiety" were severe impairments.[2] Id. At the third step, the ALJ determined that Plaintiff

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 647).

Next, the ALJ assessed Plaintiff's RFC and found that through the date last insured he retained the capacity to perform sedentary work activity, with the following limitations:

> he had to be permitted the option to sit/stand with the ability to change positions twice per hour and if working in a "sitting down" job, has the ability to stand for one minute at a time. Additionally, the claimant could stay on task for two hours at a time throughout an 8-hour workday; performing simple, routine and repetitive tasks work with no production rate work; no constant changes in routine, no complex decision-making or crisis situations; and work requiring only occasional interaction with co-workers, supervisors and the public.

(Tr. 649). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 96-4p." Id. At the fourth step, the ALJ held that Plaintiff could not perform his past relevant work as an asphalt paving supervisor. (Tr. 654).

At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 655). The ALJ had noted that Plaintiff was 45 years old as of his date last insured. (Tr. 654). The VE testified that according to the factors given by the ALJ, Plaintiff "would have been able to perform the requirements of representative 'sedentary' occupations such as surveillance system monitor (DOT 379.367-010) . . . table worker (DOT 739.687-182) . . . and stuffer (DOT 731.685-014)." (Tr. 655). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by

7

the Social Security Act, at any time between June 14, 2006, and the date last insured, December 31, 2011. (Tr. 656).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ failed to identify and obtain a reasonable explanation for apparent conflicts between the VE testimony and the DOT; (2) the ALJ rejected treating physicians' opinions without giving good reasons for doing so; and (3) the ALJ erred in assessing Plaintiff's RFC by failing to explain how he determined Plaintiff is able to perform tasks for two hours at a time. (Document No. 12, pp. 5-6). The undersigned will discuss each of these contentions in turn.

**A.     Dictionary of Occupational Titles**

In the first assignment of error, Plaintiff argues that the ALJ "accepted testimony from a vocational witness that appears to conflict with the DOT yet failed to obtain an explanation from the vocational witness." (Document No. 12, p. 6). Plaintiff notes that SSR 00-4p requires an ALJ to: (1) ask the VE if the evidence she or he has provided conflicts with the DOT; and (2) *if* the VE's evidence appears to conflict with the DOT, the ALJ must obtain a reasonable explanation of the conflict. (Document No. 12, p. 8) (citing SSR 00-4p).

Plaintiff acknowledges that the ALJ did ask the VE if her responses were consistent with the DOT, and that the VE testified that they were. (Document No. 12, p. 7) (citing Tr. 730). Plaintiff also acknowledges the ALJ's decision stated that "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." See Id. (quoting Tr. 655). Nevertheless, Plaintiff suggests that the ALJ erred because he failed to ask about the apparent conflicts now identified by Plaintiff.

First, Plaintiff contends that there is a conflict between the jobs of table worker and stuffer and the limitation to no production rate work. (Document No. 12, pp. 8-9). Plaintiff further contends that Plaintiff's limitation to simple, routine, and repetitive tasks precludes his ability to perform as a surveillance system monitor (Reasoning Level 3) and stuffer (Reasoning Level 2). (Document No. 12, p. 9). Plaintiff also asserts that the job of "surveillance system monitor is completely inappropriate," largely relying on the "O*Net" as a "relevant source." (Document No. 12, pp. 11-12. Finally, Plaintiff avers that the jobs identified by the VE conflict with the limitation to occasional interaction with supervisors, coworkers and the public. (Document No. 12, p. 12). Plaintiff argues that the VE's testimony does conflict with the DOT, because the DOT does not specify the frequency of contact/interaction a worker has with others. Id. Plaintiff again appears to rely on the O*Net for support that the VE's testimony is inconsistent with the DOT. (Document No. 12, pp. 12-15).

In response, Defendant argues that the ALJ properly relied on the VE testimony, but that even if one or two identified occupations were found to be in error, the presence of one occupation existing in significant numbers is sufficient to satisfy the Commissioner's burden. (Document No. 14, pp. 3-4); see also Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979). Defendant then addresses each of Plaintiff's arguments as summarized below. (Document No. 14, pp. 4-9).

First, Defendant notes that the ALJ's hypothetical excluded production rate occupations, and presumably, the VE responded with a number of jobs for the identified occupations that did not involve work at a production rate. (Document No. 14, p. 4). Defendant further notes that the "DOT does not identify the rate or pace at which a repetitive job must be performed, so the VE's testimony as to the rate at which the job can be performed cannot be said to conflict with any information in the DOT, as such information does not exist." (Document No. 14, p. 4). See also

9

Cogar v. Colvin, 3:13-CV-380-FDW, 2014 WL 1713795 at *7 (W.D.N.C. Apr. 30, 2014) and Lusk v. Astrue, 1:11-CV-196-MR, 2013 WL 498797, at *5 (W.D.N.C. Feb. 11, 2013). Defendant contends that "the VE provided supplemental information, not conflicting information." (Document No. 14, p. 5).

Regarding the table worker job, Defendant argues that Plaintiff has not presented persuasive evidence that the job could never be performed at a non-production rate, even if it involves a conveyor belt. (Document No. 14, p. 5). Defendant then notes multiple decisions from within the Fourth Circuit finding "no conflict with the DOT for sedentary occupations involving a conveyor belt performed at a non-production rate." (Document No. 14, pp. 5-6) (citations omitted). As to the stuffer job, Defendant argues that Plaintiff's conclusion that any job that involves recording one's production is a job done at a production rate or pace, is not supported by the DOT or the VE's testimony. (Document No. 14, p. 6).

Next, Defendant disagrees with Plaintiff's position that jobs involving "simple, routine, repetitive tasks" necessarily conflict with reasoning levels 2 and 3. (Document No. 14, pp. 6-7). Defendant then cites several cases from this Court that purportedly contradict Plaintiff's cases. Id. (citations omitted). Moreover, Defendant notes that the Henderson case relied on in Plaintiff's argument addressed a different limitation – "one-to-two step tasks" – rather than the "simple routine, repetitive tasks" limitation at issue here. (Document No. 14, p. 7) (citing Document No. 12, pp. 9-11). Defendant also contends that the Court should decline to equate surveillance system monitor with TSA officer; a suggestion by Plaintiff that "lacks foundation and goes well beyond the DOT and any supplemental testimony by the VE." (Document No. 14, p. 8).

Finally, Defendant observes that Plaintiff concedes that the DOT does not specify the frequency of contact required by an occupation. (Document No. 14, p. 8) (citing Document No.

10

12, p. 12). As such, Defendant concludes again that the VE testimony supplements the DOT, rather than conflicts with the DOT. Id. Defendant also argues that SSR 00-4p does not require the ALJ to resolve apparent conflicts with the O*Net, and Plaintiff has cited no legal authority finding that the O*Net controls over the DOT, or that the ALJ must resolve conflicts between VE testimony and the O*Net. Id. (citing Fender v. Berryhill, 1:17-CV-041-RJC, 2018 WL 1536485, at *4 (W.D.N.C. Mar. 29, 2018) (finding no duty to discuss apparent conflicts between the VE testimony and O*Net (collecting cases)).

The undersigned has also considered "Plaintiff's Reply…" (Document No. 15). Among other things, the reply brief acknowledges that there are a variety of district court decisions on the issue of conflicts between Reasoning Level 2 and 3 jobs and a restriction to simple, routine, repetitive tasks. (Document No. 15, p. 2). The undersigned agrees that there is significant variety of opinions on this issue, at least as to Reasoning Level 3. However, the undersigned is persuaded that the majority of decisions related to this issue, at least before this Court, do not find a conflict between Reasoning Level 2 and simple, routine, repetitive tasks. See McKinney v. Berryhill, 1:17-CV-168-GCM-DCK (W.D.N.C. July 23, 2018); see also Gaston v. Berryhill, 1:17-CV-182-RJC, 2018 WL 3873593, at *4 (W.D.N.C. Aug. 15, 2018); Corvin v. Berryhill, 5:17-CV-092-RJC-DSC, 2018 WL 3738226, at *4-5 (W.D.N.C. Aug. 7, 2018).

The recent decision in Bolick v. Berryhill, 5:16-CV-224-GCM, 2018 WL 4107999 (W.D.N.C. Aug. 29, 2018) is also instructive here. In Bolick, Judge Mullen noted that the ALJ was under no duty to investigate or discuss apparent conflicts with the O*Net and held that even where there may be an apparent conflict with one job, it is harmless error if there are other positions in sufficient numbers that Plaintiff can perform. Bolick, 2018 WL 4107999 at *4. Moreover, the

11

Bolick decision found that a claimant with somewhat similar limitations to Plaintiff here could perform the stuffer job. Id.

In short, the undersigned finds that if there is any error here, which the undersigned doubts, it is harmless. The undersigned again notes that ALJ Hicks was clearly aware of his instruction from the Appeals Council directing him to obtain evidence from a vocational expert if warranted, and to identify and resolve any conflicts between the evidence provided and the DOT. See (Tr. 644) (citing Tr. 741-742). ALJ Hicks then unequivocally stated that "[p]ursuant to SSR00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (Tr. 655). Even if Plaintiff's limitations might preclude him from performing a surveillance system monitor job, the undersigned is persuaded he could perform the table worker (Reasoning Level 1) and/or stuffer (Reasoning Level 2) jobs, with the limitations set forth by the ALJ.

**B.     Treating Physicians' Opinion**

Next, Plaintiff argues that the ALJ rejected *all* of the functional opinions of Walters' treating physicians without giving good reason to do so. (Document No. 12, p. 15) (citing Tr. 652-654). Plaintiff then states that "[w]hen the ALJ does not state good reasons for rejecting a treating psychiatrist's opinions, the decision must be reversed." Id.[3] The crux of Plaintiff's argument is that

> The ALJ failed to address the objective and clinical findings that tend to support the opinions of Walters' treating physicians. Moreover, the ALJ failed to evaluate or address any of the factors required to be taken into consideration when treating physicians' opinions are not given controlling weight and failed to provide good reasons for rejecting the opinions. See Malker v. Berryhill, 3:16-cv-

---

[3] The undersigned assumes this statement is a typo. Plaintiff does not otherwise identify any psychiatrist's opinions that should have been considered; and elsewhere seeks remand for a third ALJ decision, rather than reversal. See (Document No. 12, pp. 3, 24).

12

> 601 (W.D.N.C. Sep. 1, 2017). Instead, the ALJ appears to have improperly relied on his own interpretation of the medical data in functional terms

(Document No. 12, p. 18).

In response, Defendant contends that the ALJ properly weighed the medical opinions in accordance with the regulatory factors and sufficiently articulated his rationale in his decision. (Document No. 14, p. 9). Defendant's arguments and summary are compelling, and the undersigned will quote key excerpts below.

> In this case, the ALJ accurately summarized Dr. Matthew's opinion (Tr. 264, 652). . . . However, because the opinion was intended as an 8-week temporary work restriction, rather than an assessment of overall capacity, the ALJ reasonably accorded it little weight (Tr. 652-653).
>
> The ALJ also considered Dr. D'Amore's opinion and gave it "some, but not great" weight (Tr. 345, 653). The ALJ noted Dr. D'Amore was a pain specialist and a treating medical provider (Tr. 653). 20 C.F.R. § 404.1527(c)(2) and (c)(5). The ALJ then looked to the relevant evidence discussed throughout his decision to determine supportability. 20 C.F.R. § 404.1527(c)(3). The ALJ concluded that, to the extent D'Amore opined that positional changes were needed, the ALJ found that a sit/stand option was supported by the record (Tr. 653).
>
> The ALJ also found the lifting restrictions ("no greater than 5-10 pounds on a less than occasional basis") supported, and incorporated them in the RFC for sedentary work, which involves by definition lifting no more than 10 pounds at a time (Tr. 345, 653). SSR 96-9P (S.S.A.), 1996 WL 374185, at *3. Plaintiff argues the ALJ erred by not reciting Dr. D'Amore's exact lifting limitations in the RFC; however, it is clear that the ALJ "incorporated" Dr. D'Amore's similar lifting restrictions by limiting Plaintiff to sedentary work, rather than adopting or reciting the lifting restrictions *verbatim*. The ALJ further found that the other opined restrictions were not supported. The ALJ specifically noted that the objective findings and the daily activities suggested greater capabilities, and further that the treatment notes showed that his medications helped his symptoms including pain and improved his ability to function (Tr. 653).
>
> Next, the ALJ considered the 2013 opinion of Dr. Powers (Tr. 614). . . . The ALJ found that her diagnoses were supported by the evidence and therefore accorded great weight. 20 C.F.R. § 404.1527(c)(3). However, the ALJ correctly noted that her opinion that Plaintiff was

13

> unable to work is not considered a medical opinion under the regulations nor can it be given any special significance because the ultimate determination of disability is an issue reserved to the Commissioner (Tr. 653-654). 20 C.F.R. § 404.1527(d). The ALJ nonetheless considered these statements and concluded that they were too vague and conclusory to establish functional limitations (Tr. 654).

(Document No. 14, pp. 9-10).

In concluding, Defendant notes that the ALJ did not "dredge up 'specious inconsistencies' or otherwise provide insufficient reasoning to warrant disturbing his findings." (Document No. 14, p. 11) (citations omitted). Defendant further asserts that the RFC determination is a legal decision rather than a medical one, and that the ALJ is not required to rely on any medical opinions. Id. (citations omitted).

In reply, Plaintiff only argues that the ALJ failed to properly assess Dr. D'Amore's opinion. (Document No. 15, p. 3). At least in the reply, Plaintiff does not further challenge the ALJ's assessment of the opinions of Drs. Powers, Matthews, or Pai. See (Tr. 650-653).

The undersigned is not persuaded that the ALJ's decision rejects *all* of the treating physicians' opinions. As Defendant notes, the ALJ opined that he gave "some but not great weight to limitations given by Dr. D'Amore" and included some of these limitations in the RFC. (Tr. 651, 653) (citing Tr. 345, 458, 862); see also (Document No. 14, p 9). Moreover, ALJ Hicks gave

> great weight to Dr. Powers' diagnoses as they are supported by the objective medical findings. However, the undersigned gives little weight to her opinions that the claimant was not functionally able to conduct any work-related activities, return to work or to fully participate in a full workday.

(Tr. 653-654) (citing Tr. 614, 621).

The undersigned observes that ALJ Hicks noted at the outset of his decision that he had been directed by the Appeals Council to further consider "the treating opinion of Dr. D'Amore and explain the weight given to [that] opinion." (Tr. 644); see also (Tr. 739-742). Plaintiff

14

suggests that ALJ Hicks still failed to properly consider D'Amore's opinion, and "made no effort to evaluate the length, nature, and extent of treatment relationship or the frequency of treatment." (Document No. 15, pp. 3-4). However, Plaintiff also declines to address these details. It appears that the only note/issue regarding Dr. D'Amore is one visit on May 10, 2011. On that date, D'Amore states that she had reviewed his file in detail, and his history both in the record and in person with Mr. Walters that day, as well as reviewing his physical work performance evaluation from March 26, 2011. (Tr. 345, 458, 862) (citing Tr. 864-866). Neither Dr. D'Amore's notes, nor Defendant's brief, cite to any other visits with, or treatment by, Dr. D'Amore. Id.; see also (Document Nos. 12 and 15). Rather, the record before the Court suggests that Dr. Powers and other treating physicians had a significantly longer relationship and more frequent interactions with Plaintiff than Dr. D'Amore.

The undersigned is satisfied that the ALJ gave Dr. D'Amore's opinion proper consideration and adequately explained the weight he gave that opinion. See (Tr. 650-653). It does not appear that the ALJ rejected Dr. D'Amore's opinion as Plaintiff contends, but instead that he found some of the limitations in her report to be supported by the record and incorporated those limitations into the RFC. (Tr. 651, 653). The undersigned will respectfully decline to re-weigh the evidence here, or to recommend that this matter be remanded for a third ALJ to weigh the evidence.

**C.      RFC Assessment**

Finally, Plaintiff argues that the ALJ erred by failing to explain why the RFC provides that Plaintiff "could stay on task for two hours at a time throughout an 8-hour workday." (Document No. 12, pp. 21-24);  (Tr. 649). Plaintiff concludes that the ALJ's failure to "show his work" on why he included this limitation in Plaintiff's ability to stay on task requires remand. (Document

15

Case 3:17-cv-00538-GCM-DCK Document 16 Filed 11/05/18 Page 15 of 18

No. 12, pp. 23-24) (citing Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) and Patterson v. Comm'r of Social Security, 846 F.3d 656 (4th Cir. 2017)).

In response, Defendant contends that the ALJ explicitly addressed Plaintiff's ability to stay on task in accordance with Mascio. (Document No. 14, p. 12) (citing Tr. 649). Defendant notes that courts within this district have found that Mascio "only requires a remand when an ALJ's opinion is 'sorely lacking' in a manner that 'frustrates meaningful review.'" Id. (quoting Ponder v. Berryhill, 1:15-CV-289-RJC, 2017 WL 1246350, at *4 (W.D.N.C. Mar. 31, 2017)). Defendant asserts that the ALJ's finding is supported by his "detailed review of the medical records, course of treatment, examination results, daily activities, and opinion evidence." Id. (citing Tr. 648-654).

Defendant further states:

> Plaintiff does not cite to any evidence supporting a greater off task limitation, and no medical source has opined that Plaintiff would have difficulties remaining on task. It is not the ALJ's burden to prove that Plaintiff can perform work simple tasks for two hours at a time; rather, it is Plaintiff's burden to establish the existence of limitations that prevent him from working. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"); *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) ("[The claimant] "bears the burden of proving that he is disabled within the meaning of the Social Security Act"); *see also* 20 C.F.R. § 404.1512(a) (stating: "you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"). Here, Plaintiff has not provided evidence establishing any greater off-task limitations. The ALJ based his conclusion on the relevant evidence before him, as articulated in the written decision. As a result, the ALJ's decision does not frustrate meaningful review, and the RFC findings are supported by substantial evidence.

(Document No. 14, p. 13).

In reply, Plaintiff re-asserts that the ALJ's decision frustrates meaningful review. (Document No. 15, pp. 4-5).  Plaintiff contends that "[i]t is an arbitrary finding unsupported by an objective findings or opinion evidence."  (Document No. 15, p. 4).

The undersigned finds Defendant's arguments and authority most persuasive.  Under the circumstances of this case, the undersigned does not find that the ALJ's failure to explicitly explain his reasoning for his opinion on Plaintiff's ability to stay on task for two hours at a time requires remand or reversal.  Instead, the undersigned finds that the ALJ's decision is thorough, applies the correct legal standards, and is supported by substantial evidence.

## IV. CONCLUSION

There is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971);  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

In addition, the undersigned again notes that this matter was remanded to ALJ Hicks pursuant to the "Order Of Appeals Council Remanding Case To Administrative Law Judge," including specific instructions regarding what the ALJ should further consider upon remand.  (Tr. 739-742).  Here, the ALJ noted those instructions, and his decision includes an adequate consideration of the issues pursuant to the Appeals Council's instructions.  See (Tr. 644, 649-655).

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 11) be **DENIED**;  the "Commissioner's Motion For Summary Judgment" (Document No. 13) be **GRANTED**;  and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: November 5, 2018

David C. Keesler
United States Magistrate Judge